**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**GEORGE ADAM,**

                **Plaintiff,**

    - against -

**THE METROPOLITAN TRANSPORATION
AUTHORITY, ET AL.,**

                **Defendants.**

────────────────────────────────────────

                **07 Civ. 8807 (JGK)**

                <u>**MEMORANDUM OPINION AND
ORDER**</u>

**JOHN G. KOELTL, District Judge:**

    The plaintiff, George Adam, brought this action against the Metropolitan Transportation Authority ("MTA") and the MTA police department (collectively, the "Municipal Defendants"), as well as MTA police officers Arnold E. Pfeiffer and Raymond T. Reichel, MTA detectives Henershot and Rucano, Sgt. Giel, Lt. Devlin, and John and Jane Does 1-2 (collectively, the "Individual Defendants"). The plaintiff alleges claims of false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983 and New York state law. The defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

                                      I

    The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Behringer v. Lavelle Sch. for Blind, No. 08 Civ. 4899, 2010 WL 5158644, at *1 (S.D.N.Y. Dec. 17, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

2

(citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Behringer, 2010 WL 5158644, at *1.

## II

The following facts are undisputed unless otherwise noted. The plaintiff was a machinist for the Long Island Rail Road ("LIRR") assigned to the Oyster Bay train yard.  (Defs.' 56.1 Stmt. ¶ 1; Pl.'s 56.1 Stmt. ¶ 1.)  At about 6:50 a.m. on June 19, 2006, the plaintiff, after working the night shift, was seated in the train yard break room with the lights off using his laptop computer.  (Defs.' 56.1 Stmt. ¶¶ 3, 6; Pl.'s 56.1 Stmt. ¶¶ 3, 6.)  A coworker, Tom Atanasio, entered the break room and turned on the lights.  (Defs.' 56.1 Stmt. ¶¶ 7, 9; Pl.'s 56.1 Stmt. ¶¶ 7, 9.)  The plaintiff stood up, told Atanasio he was

3

going to turn the lights off again, and then turned off the lights and sat back down. (Defs.' 56.1 Stmt. ¶ 10; Pl.'s 56.1 Stmt. ¶ 10.) Atanasio turned on the lights again and began yelling at the plaintiff. (Defs.' 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. ¶ 11.) When the plaintiff tried to get up from his seat, Atanasio pushed him down. (Defs.' 56.1 Stmt. ¶ 14; Pl.'s 56.1 Stmt. ¶ 14.) Then, Atanasio walked to the other side of the room and started to cut some strawberries with a knife. (Defs.' 56.1 Stmt. ¶¶ 18, 19; Pl.'s 56.1 Stmt. ¶¶ 18, 19.)

The foreman, Ernie Kozee, overheard the commotion and entered the break room. (Defs.' 56.1 Stmt. ¶ 22; Pl.'s 56.1 Stmt. ¶ 22.) In Kozee's presence, Atanasio said, "Let's just drop it," to which the plaintiff replied, "No. You got a problem . . . ." The plaintiff then said, "You know what? I'm getting out of here. I don't need this." (Defs.' 56.1 Stmt. ¶¶ 23, 24; Pl.'s 56.1 Stmt. ¶¶ 22-24.) Kozee asked Atanasio and the plaintiff if there was a problem; neither responded and all three men left the room. (Defs.' 56.1 Stmt. ¶¶ 25-26; Pl.'s 56.1 Stmt. ¶¶ 25-26.)

The plaintiff reported this incident to his union representative, to Kozee, and to the supervisor of the Oyster Bay yard. (Defs.' 56.1 Stmt. ¶¶ 27, 28; Pl.'s 56.1 Stmt. ¶¶ 27, 28.) Later that morning, MTA officers Pfeiffer and Reichel arrived at the train yard to question the parties who were

4

involved in the incident. (Defs.' 56.1 Stmt. ¶¶ 31, 32; Pl.'s 56.1 Stmt. ¶¶ 31, 32.) Atanasio told the officers that the plaintiff stabbed him with a knife. (Defs.' 56.1 Stmt. ¶ 35; Pl.'s 56.1 Stmt. ¶ 35.) The officers observed a bleeding cut on Atanasio's arm, which was about two inches long but did not look serious. (Pl.'s Mem. of Law in Opp'n to Defs'. Mot. for Summ. J. ("Pl.'s Mem.") Ex. B ("Pfeiffer Dep.") at 65-68.)[1] An ambulance was called for Atanasio, after which the bleeding was stopped with a band-aid. (Pfeiffer Dep. at 79-80; Pl.'s 56.1 Stmt. ¶ 67; Pl.'s Mem. Ex. J.) The officers informed the plaintiff that Atanasio had accused him of stabbing him with a knife and wanted to press charges; they then arrested the plaintiff. (Defs.' 56.1 Stmt. ¶¶ 35, 37, 38; Pl.'s 56.1 Stmt. ¶¶ 35, 37, 38.)

The plaintiff was arraigned the following morning on a felony complaint. (Defs.' 56.1 Stmt. ¶ 43; Pl.'s 56.1 Stmt. ¶ 43.) He was released from custody the same day, after the court issued an order of protection that prohibited the plaintiff from having any contact with Atanasio. (Defs.' 56.1 Stmt. ¶¶ 46, 47; Pl.'s 56.1 Stmt. ¶¶ 46, 47; Jemal Decl. Ex. E ("Adam Dep." at 300-01.)

---

[1] The parties dispute the severity of Atanasio's injury and whether it was a cut or an abrasion.

On September 6, 2006, the plaintiff, who was at the courthouse for a matter related to his first arrest, was rearrested, this time for violating the order of protection. (Defs.' 56.1 Stmt. ¶ 48; Pl.'s 56.1 Stmt. ¶ 48.)  The arresting MTA detectives told the plaintiff that Atanasio alleged that the plaintiff had called the train yard on August 30, 2006 and spoke with him, thereby violating the order of protection.  (Defs.' 56.1 Stmt. ¶ 49; Pl.'s 56.1 Stmt. ¶ 49; Adam Dep. at 301-03.) The plaintiff, although admitting that he had called the train yard, denied speaking with Atanasio.  (Defs.' 56.1 Stmt. ¶¶ 50-53; Pl.'s 56.1 Stmt. ¶¶ 50-53; Adam Dep. at 301-03.)  The plaintiff was released from custody on or before September 18, 2006.  (Defs.' 56.1 Stmt. ¶ 55; Pl.'s 56.1 Stmt. ¶ 55.)

The plaintiff alleged in his complaint that he accepted an Adjournment in Contemplation of Dismissal ("ACD"), pursuant to New York Criminal Procedure Law ("CPL") § 170.55, for all criminal charges. (Compl. ¶ 37; Defs.' 56.1 Stmt. ¶ 54.)  On this motion for summary judgment, however, the plaintiff asserts that his criminal contempt charge was dismissed due to a legal impediment on March 23, 2007, pursuant to a joint application under CPL § 170.30(1)(f).  (Pl.'s 56.1 Stmt. ¶ 54; Pl.'s Mem. Ex. G ("Sentence Minutes").)  The plaintiff also alleges that the charges stemming from the first arrest were dismissed pursuant to the ACD on March 16, 2007.  (Pl.'s 56.1 Stmt. ¶ 54.)

6

The plaintiff filed a notice of claim on May 2, 2007, and filed this law suit on October 12, 2007. (Jemal Decl., Ex. A.).

### III

#### A.

As an initial matter, the defendants move to dismiss the plaintiff's claims under the First, Eighth, and Fourteenth Amendments as vague and conclusory.  In his complaint, the plaintiff referred to alleged violations of the First and Eighth Amendments and the Fourteenth Amendment right to due process. (Compl. ¶ 40.)  However, the plaintiff never made any of those provisions the basis for his federal causes of action, which are specifically asserted in Counts 1, 2, and 3 as false imprisonment, false arrest, and malicious prosecution, in violation of 42 U.S.C. § 1983.  In response to the motion for summary judgment, the plaintiff did not attempt to respond to the argument that any such claims are unsubstantiated.  Any such claims are therefore abandoned.  See Bowen v. Cnty. of Westchester, 706 F. Supp. 2d. 475, 492 (S.D.N.Y. 2010) (collecting cases).  Moreover, there is no evidence in support of such claims and the plaintiff made it clear at argument that he was not pursuing them.  Therefore, those claims must be dismissed.

7

**B.**

The defendants move to dismiss the plaintiff's claim for municipal liability under 42 U.S.C. § 1983 against the MTA and the MTA police department (the "Municipal Defendants").[2] "Municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). Municipalities are not subject to liability under theories of respondeat superior, but rather on the basis that their policies or customs "inflict[ed] the injury upon the plaintiff." Id. "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id.; see also Adams v. City of New York, No. 08 Civ. 5263, 2010 WL 743956, at *6 (S.D.N.Y. Mar. 2, 2010).

---

[2] The MTA is a New York City authority. The parties do not dispute that the MTA and its police department are municipal entities. See Rivera v. Metro. Transit Auth., No. 09 Civ. 5879, 2010 WL 4545579, at *4 (S.D.N.Y. Nov. 11, 2010); Smith v. Metro North Commuter R.R., No. 98 Civ. 2528, 2000 WL 1449865, at *9 (S.D.N.Y. Sept. 29, 2000).

The defendants argue that the plaintiff has failed to assert or prove that the alleged violations occurred as a result of a municipal policy or custom.  Again, the plaintiff has not responded to this argument and has put forth no evidence to support this claim.  The claim is therefore abandoned and, in any event, must be dismissed because there is no evidence to support it.

At argument, the plaintiff did not dispute that he failed to respond to the defendants' Monell argument in his opposition brief.  He contended that municipal liability could be based on a theory of failure to train, but he conceded that he never made that argument in his papers or offered any support for this argument.  This belated argument, unsupported in the papers, is not a basis to resuscitate an abandoned argument.  Therefore, the § 1983 claim against the Municipal Defendants is dismissed.

c.

The defendants next move for summary judgment on the plaintiff's federal and state false arrest, false imprisonment,[3]

---

[3] The plaintiff's false imprisonment claim is no different from his false arrest claim.  "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." Covington v. City of New York, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting); see also Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) (describing false arrest as "a species of false imprisonment" (internal quotation marks omitted)); Evans v. City of New York, 308 F. Supp. 2d 316, 329 n.8 (S.D.N.Y. 2004),

9

and malicious prosecution claims against the Individual Defendants.

"In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) (collecting cases); see also, e.g., Munoz v. City of New York, No. 04 Civ. 1105, 2008 WL 464236, at *4 (S.D.N.Y. Feb. 20, 2008) (applying state law to false arrest claim under § 1983 based on "Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause"); Caceres v. Port Auth. of N.Y. and N.J., 646 F. Supp. 2d 412, 420-21 (S.D.N.Y. 2009), aff'd in relevant part, 631 F.3d 620 (2d Cir. 2011). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d Cir. 2010) (internal quotation marks omitted). Probable cause is justification for an arrest and therefore is a complete defense to a false arrest claim. Id. at 536; Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010); see also Caceres, 646 F. Supp. 2d at 421.

---

aff'd, 123 Fed. App'x 433 (2d Cir. 2005). Accordingly, there is no need to analyze the false imprisonment claims separately from the false arrest claim.

To sustain a § 1983 claim based on malicious prosecution, a plaintiff must demonstrate a seizure amounting to a Fourth Amendment violation and must establish the elements of a malicious prosecution claim under state law.  See Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010); Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).  To state a claim for malicious prosecution under New York law, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Manganiello, 612 F.3d at 161 (internal quotation marks omitted).  Probable cause is a complete defense to a malicious prosecution claim.  Id. at 161-62; Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003); see also Fernandez v. City of New York, No. 02 Civ. 8195, 2003 WL 21756140, at *4 (S.D.N.Y. July 29, 2003).

1.

Probable cause for an arrest exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Dickerson, 604 F.3d at 751 (internal quotation marks omitted). "It is well-established

11

that a law enforcement official has probable cause to arrest if he received his information from . . . the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks, brackets, and citations omitted). Once an officer has a reasonable basis for believing there is probable cause, the officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Walczyk v. Rio, 496 F.3d 139, 160 (2d Cir. 2007) (internal quotation marks omitted). "A finding of probable cause is not foreclosed where a police officer is presented with different stories from an alleged victim and an arrestee." Drummond v. Castro, 522 F. Supp. 2d 667, 675 (S.D.N.Y. 2007) (internal quotation marks and brackets omitted). Even if an arresting officer would be entitled to believe the arrestee's version of contested events, instead of the purported victim's, the officer is not required to do so. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); see also Adams, 2010 WL 743956, at *5.

   With respect to the plaintiff's first arrest, MTA officers Pfeiffer and Reichel had probable cause to arrest the plaintiff. Before arresting the plaintiff, the officers knew that Atanasio, the complaining victim, claimed that the plaintiff had stabbed him. The officers interviewed Atanasio, the plaintiff, and

Kozee.  All three men confirmed that an altercation had occurred.  Moreover, while speaking with Atanasio, the officers observed an injury on his arm, which further supported the assault charge.  There is no evidence that the plaintiff came away from the acknowledged confrontation with any visible injuries.  Therefore, even though the plaintiff denied assaulting Atanasio, the MTA officers were entitled to rely on Atanasio's statement and the corroborating evidence.  Given the facts presented to the officers, the officers had probable cause to arrest the plaintiff.  They were not required to accept the plaintiff's denials or to walk away from an apparently violent confrontation without making an arrest.

The plaintiff argues that the officers did not have probable cause to arrest the plaintiff for a violation of New York Penal Law § 120.05(2), assault in the second degree, because he claims that Atanasio's injury was insufficient to justify such a charge, which requires an "impairment of physical condition or substantial pain."  N.Y. Penal L. §§ 10.00(9), 120.05(2).  However, the arresting officers also filed complaints charging violation of New York Penal Law § 265.01, criminal possession of a weapon in the fourth degree, and New York Penal Law § 120.14, menacing in the second degree, neither of which require the actual imposition of a physical injury.  Both offenses are class A misdemeanors and are thus arrestable

13

offenses. See CPL § 140.10. It is well established that an arresting officer only needs probable cause to arrest for an offense, not all offenses charged. Jaegly v. Couch, 439 F.3d 149, 153-54 (2d Cir. 2006); Dickerson, 604 F.3d at 752. Therefore, based on Atanasio's statement and the officers' observations, probable cause existed for the plaintiff's first arrest.

Similarly, MTA detectives Henershot and Rucano had probable cause to arrest the plaintiff on the second occasion. After the detectives received the complaint from Atanasio, they reviewed the case file and the order of protection. (Jemal Decl. Ex. F ("Rucano Dep.") at 51-68.) They took a sworn statement from Atanasio at the train yard. (Rucano Dep. at 50-57, 72-74, 90-91.) Only after the detectives had this information did they arrest the plaintiff at the courthouse. Therefore, the detectives had probable cause to arrest the plaintiff for contempt in violating the order of protection.

The plaintiff contends that the detectives should not have arrested the plaintiff based upon Atanasio's sworn statement because Atanasio had been accused of dishonesty in August 2006. (Pl.'s Mem. at 17-18.) The detectives denied having any knowledge of these accusations. Moreover, even if the detectives were aware of these accusations, there was still adequate evidence — namely, the order of protection, the

14

detailed sworn statement of the complaining witness, and the plaintiff's own admission that he called the train yard — to provide the officers with probable cause to arrest the plaintiff.  See Otero v. Jennings, 698 F. Supp. 42, 45 (S.D.N.Y. 1988) (holding that the existence of an order of protection qualifies as a showing of probable cause under New York law); Marino v. Reina, No. CV-04-1674, 2007 WL 632373, at *5 (E.D.N.Y. Feb. 27, 2007) (holding that an order of protection and "reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that [the person restrained] was committing a crime by violating it"). Therefore, the plaintiff's claims for false arrest, false imprisonment, and malicious prosecution under § 1983 and state law are dismissed.

2.

It is also clear that the ACD would prevent the plaintiff's claim of malicious prosecution for the first arrest.  "One element that must be alleged and proved in a malicious prosecution claim is termination of the prior criminal proceeding in favor of the accused."  DiBlasio v. City of New York, 102 F.3d 654, 658 (2d Cir. 1996) (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)).  The "[p]laintiff in [a] malicious prosecution action bears the burden of establishing that the underlying criminal action terminated favorably to

15

him." MacFawn v. Kresler, 666 N.E.2d 1359, 1359 (N.Y. 1996). Under New York law, an ACD is "not a favorable termination because it leaves open the question of the accused's guilt." Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002). This is an independent reason that the plaintiff's claim for malicious prosecution arising from his first arrest must be dismissed.

The plaintiff now asserts, contrary to his complaint, that the second charge was disposed of not on an ACD, but due to a legal impediment under N.Y. Crim. Proc. L. § 170.30(1)(f), and that this termination was favorable.

The New York Court of Appeals has explained that "any final termination of a criminal proceeding in favor of the accused, such that the proceedings cannot be brought again, qualifies as a favorable termination for purposes of malicious prosecution action." Smith-Hunter v. Harvey, 734 N.E.2d 750, 753 (N.Y. 2000). The Court of Appeals specifically found that a dismissal on speedy trial grounds was sufficiently favorable to the defendant to be a predicate for a malicious prosecution claim. Id. The Court of Appeals recognized that there are exceptions to the general rule when a termination is inconsistent with innocence, or when the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused. Id. The Court of Appeals specifically reaffirmed the result in MacFawn, where it had found that dismissal of a complaint for malicious

16

prosecution was proper where the underlying charge was dismissed under N.Y. Crim. Proc. L. §§ 170.30(1)(a) and 170.35(1)(a) because the criminal action was disposed of on procedural grounds. Id. at 754; see also MacFawn, 666 N.E.2d at 1359-60.

This case in akin to the exceptions described in Smith-Hunter and the decision in MacFawn. A dismissal pursuant to section 170.30(1)(f) does not necessarily constitute "an adjudication on the facts going to guilt or innocence," People v. Schaum, 774 N.E.2d 217, 217 (N.Y. 2002) (internal quotation marks omitted), and thus may or may not constitute a favorable termination, see Morgan v. Nassau Cnty., No. 03 Civ. 5109, 2009 WL 2882823, at *8 n.6 (E.D.N.Y. Sept. 2, 2009). Here, the plaintiff does not explain what the legal impediment was, and the sentence minutes upon which the plaintiff relies do not refer to innocence. The dismissal was based on the prosecution's motion, with the consent of the defendant, based on a jurisdictional or legal impediment, and there is nothing in the record to support the plaintiff's assertion that the "impediment" was the plaintiff's innocence. In any event, the malicious prosecution claim relating to both arrests must be dismissed because of the existence of probable cause.

3.

The Individual Defendants are also entitled to qualified immunity. Officers are entitled to qualified immunity if

17

"either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002) (internal quotation marks omitted); Caceres v. Port Authority of New York and New Jersey, 631 F.3d 620, 622 (2d Cir. 2011); see also Adams, 2010 WL 743956, at *5.

As discussed above, the Individual Defendants had probable cause to arrest the plaintiff. Moreover, even if there were a question as to probable cause, the Individual Defendants had arguable probable cause because, at the very least, officers of reasonable competence could have disagreed on whether the Individual Defendants had probable cause to arrest the plaintiff. Therefore, the Individual Defendants were protected by qualified immunity in this case.

## D.

The plaintiff's state law claims of false imprisonment, false arrest, and malicious prosecution must also be dismissed because the officers had probable cause. See Martinez v. City of Schenectady, 761 N.E.2d 560, 564 (N.Y. 2001) (false imprisonment); Scherr v. City of Lackawana, 913 N.Y.S.2d 602, 602 (App. Div. 2010) (false arrest); Hoyt v. City of New York, 727 N.Y.S.2d 317, 318 (App. Div. 2001) (malicious prosecution). Moreover, for the reasons explained above, the Individual

18

Defendants are entitled to qualified immunity.  See Arzeno v. Mack, 833 N.Y.S.2d 480, 481 (App. Div. 2007).

In addition, the plaintiff's state law claims for false arrest and false imprisonment must be dismissed because the plaintiff failed to comply with New York's notice of claim requirements.  See N.Y. Gen. Mun. Law §§ 50-e, 50-i.  Under New York law, a plaintiff asserting state law tort claims against a municipal defendant or its employees must (1) file a notice of claim within ninety days after the claim arises, and (2) commence the action within one year and ninety days after the cause of action accrues.  Id.  Claims for false imprisonment and false arrest accrue upon a plaintiff's release from custody. Avgush v. Town of Yorktown, 755 N.Y.S.2d 647, 647 (App. Div. 2003).

With regard to his false arrest and false imprisonment claims, the plaintiff filed a notice of claim well beyond the ninety-day limit.  The plaintiff's first arrest occurred on June 19, 2006, and he was released from custody the following day. The plaintiff's second arrest occurred on September 6, 2006, and he was released from custody on or before September 18, 2006. The fact that the plaintiff's criminal charges were not dismissed until March 2007 is immaterial to the rule that a plaintiff's false arrest and false imprisonment claim accrue upon his release from custody.  See Rateau v. City of New York,

19

No. 06-CV-4751, 2009 WL 3148765, at *14 (E.D.N.Y. Sept. 29, 2009). Accordingly, September 18 and December 18, 2006 were the last days on which the plaintiff could file a timely notice of claim based on the respective arrests. However, the plaintiff did not file a notice of claim until May 2, 2007, which was long after the expiration of the claim deadlines.

Therefore, the plaintiff's state law claims for false arrest and false imprisonment must be dismissed on this basis as well.[4]

## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment is **granted**. The Clerk is directed to enter judgment dismissing the complaint and closing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:   New York, New York
         March 14, 2011

                                          G. Koeltl
                                      _____
                                          John G. Koeltl
                                      United States District Judge

---

[4] The plaintiff's claims for malicious prosecution only accrued on the termination of the proceedings against him, which the parties agree occurred in March 2007. See Bumbury v. City of New York, 880 N.Y.S.2d 44, 45 (App. Div. 2009). Those claims are therefore not barred for untimeliness, although they fail for the reasons discussed above.

20